The PEOPLE of the State of
Colorado, Complainant,

v.

Russell Edward VIGIL,
Attorney–Respondent.

No. 89SA6.

Supreme Court of Colorado,
En Banc.

Sept. 18, 1989.

Linda Donnelly, Disciplinary Counsel, and Susan L. Fralick, Asst. Disciplinary Counsel, Denver, for complainant.

James M. DeRose, Denver, for attorney-respondent.

Justice ROVIRA delivered the Opinion of the Court.

The disciplinary counsel filed two complaints with the Colorado Supreme Court Grievance Committee alleging professional misconduct by the respondent, Russell Edward Vigil. After a hearing in which the two proceedings were consolidated, a hearing board (board) of the Supreme Court Grievance Committee found that respondent failed to answer post-judgment interrogatories, neglected a client's affairs, intentionally violated the Rules of Civil Procedure, and engaged in an improper *ex parte* communication with a judge.

The board concluded that respondent's conduct violated DR1–102(A)(6) (conduct that adversely reflects on the fitness to practice law); DR6–101(A)(3) (neglect of a legal matter); DR7–106(C)(7) (intentional or habitual violation of rules of procedure or evidence); and DR7–110(B) (*ex parte* communication with a judge).

The board recommended a private censure as the appropriate discipline. The hearing panel rejected that recommendation on the grounds that respondent's misconduct was serious and his disciplinary history extensive.[1] We conclude that a public censure is the appropriate discipline and so reject the recommendation of the board and adopt that of the hearing panel.

We summarize the facts from the findings of fact and conclusions of the board. The facts were established by clear and convincing evidence presented in proceedings before the board.

Respondent was admitted to the bar of this court on May 17, 1976. As part of an informal separation agreement between him and his wife, he agreed to pay the rent due on a house she rented from Elmer J. Knapp. Respondent assured Knapp that he would be responsible for the rental payments in the amount of $750 per month.

In May 1984, Knapp filed suit against respondent and his wife. Both were personally served; neither filed an answer, and default judgment was entered against respondent in the amount of $1,875 on May 31, 1984.

Post-judgment interrogatories were served on respondent by leaving them with his legal assistant at his office on February 21, 1985. Respondent knowingly failed to

---

**1.** The hearing board members were unanimous in their findings, conclusions, and recommendation. The hearing panel unanimously approved the findings and conclusions, but one member dissented from the recommendation. One member of the panel did not participate.

answer the interrogatories. Subsequently, he paid the judgment in full.

In the second grievance case, National Account Systems (NAS), as the assignee of Mercy Medical Center, filed a lawsuit in July 1983, against Lillian and George Sandoval who retained respondent to represent them. In August 1983, NAS, through its attorney, Linda Petrino, filed a motion for default judgment and a proposed form of order which was signed by Judge Brooks on August 25, 1983. NAS failed to give respondent, on behalf of the Sandovals, a three-day notice of a hearing on the motion as required by C.R.C.P. 55(b)(2).

Several weeks later, a writ of garnishment, initiated by NAS, was served on the Sandovals' bank which froze the account. Upon receiving this information on October 26, 1983, respondent contacted Judge Brooks who advised him to call Petrino, counsel for NAS. The following day, without having contacted Petrino and without filing a written motion, respondent presented Judge Brooks with an order setting aside the default judgment.[2] The court signed the order which provided that the default judgment would be vacated, required NAS to return $1,100 it had obtained from the Sandovals, and ordered NAS to cease and desist from any further efforts to collect the judgment. The order also required NAS to compensate the Sandovals for any damages suffered as a result of the garnishment, and scheduled a hearing on the amount of those damages for November 2, 1983.

On October 28, 1983, Judge Brooks held a hearing at which respondent and Petrino were present. While there was extensive argument as to whether the original default judgment was properly entered and whether it should have been vacated without notice to Petrino, there was no dispute that an *ex parte* communication between respondent and the judge had taken place.[3]

On November 1, 1983, the trial court ruled that the default judgment was void, ordered the Sandovals' bank to restore the funds to their account, prohibited NAS from any further collection efforts, and required respondent to file an answer within twenty days.

Respondent filed an answer, a counterclaim in the amount of $500,000 for wrongful garnishment, and a third-party complaint against Capital Life Insurance Company (Capital). The third-party complaint alleged that Capital was responsible for paying the medical bill which was the subject of NAS's complaint.

NAS then retained Randall Herrick–Stare to represent it in connection with the counterclaim. On March 3, 1984, he filed a motion for a more definite statement. Respondent failed to respond to this motion. On June 14, 1984, the court granted the motion and ordered respondent to file a more definite statement within ten days. Upon his failure to do so, Herrick–Stare moved to strike the counterclaim for failure to comply with the court's order. Respondent did not file a response to the motion to strike, and accordingly, the court ordered the counterclaim stricken on August 17, 1984.

Six days later, respondent moved to reinstate the counterclaim. After a hearing on September 21, 1984, the court granted the motion and gave respondent ten days to file the more definite statement. Because of his failure to do so, another motion to dismiss the counterclaim was filed. Respondent ignored the motion and it was granted on December 12, 1984.

In January 1985, NAS filed a motion for summary judgment on the complaint. Respondent failed to respond to the motion and it was granted on February 5, 1985. Respondent's brief in opposition to the motion was filed on February 6, and on February 7, the order granting summary judgment was set aside.

---

**2.** Respondent placed a telephone call to NAS's counsel while in the judge's chambers and in his presence, but she was not available.

**3.** During the course of the hearing, Judge Brooks stated: "The Court is always in a position to grant immediate relief, *ex parte* or not, if it is convinced that immediate relief is ... absolutely necessary."

In April 1985, NAS filed a motion for relief under C.R.C.P. 60 from the February 7 order vacating summary judgment. Respondent failed to reply to that motion, and on April 29, 1985, the court vacated the February 7 order. The court entered judgment in favor of NAS in the amount of $6,365.34, and awarded attorney fees to NAS against respondent and the Sandovals in the amount of $750.

On January 23, 1985, in the Capital litigation, the court granted a motion by Capital to compel discovery and for sanctions. It ordered respondent and the Sandovals to pay $368.75 in attorney fees for failure to comply with discovery. Again, respondent failed to interpose any objection to the motion to compel.

On March 27, 1986, respondent filed a trial data certificate in which he referred to the Sandovals' counterclaim against NAS as though it was still viable, even though it had been dismissed in December 1984. NAS filed a motion to strike and for attorney fees based upon respondent's assertion of the counterclaim in the trial data certificate. Again, respondent failed to respond to this motion, and on April 14, 1986, the court granted the motion and awarded $125 attorney fees against respondent and his clients.

Finally, a settlement was reached between NAS, Capital, and the Sandovals, the details of which have been kept confidential. Mr. Sandoval testified at the grievance hearing that respondent kept him fully informed and that he was satisfied with respondent's representation. He also asserted the attorney-client privilege in connection with the litigation and refused to discuss any of the conversations he had with respondent.

In considering the Knapp matter, the hearing board concluded that respondent engaged in conduct adversely reflecting on his fitness to practice law, because he failed to answer post-judgment interrogatories. The board found respondent's testimony, that he never received the interrogatories, not credible in light of the evidence which showed that a Denver County Deputy Sheriff served the interrogatories on his legal assistant, who, at the time of the hearing, was still working for him.

The board's finding that respondent received the interrogatories and simply failed to answer them is supported by clear and convincing evidence. We agree with the board's conclusion that such conduct adversely reflects on respondent's fitness to practice law in violation of DR1–102(A)(6).

With reference to the Sandoval litigation, the board concluded that respondent's neglect and inattention to his responsibilities as an officer of the court, even in the absence of complaint by his clients, warranted discipline. The board further concluded that respondent's repeated and intentional violation of the Rules of Civil Procedure, his neglect of the Sandoval matter, and his *ex parte* communication with the court violated DR7–106(C)(7), DR6–101(A)(3), and DR7–110(B). We agree.

In arriving at its recommendation concerning the appropriate discipline, the board considered the four letters of admonition respondent has received, and other aggravating and mitigating circumstances. *See* ABA Standards for Imposing Lawyer Sanctions § 9.0 (1986). It considered as aggravating factors respondent's pattern of misconduct, multiple offenses, his refusal to acknowledge the wrongful nature of his conduct, and selfish motive in connection with his refusal to answer the post-judgment interrogatories. It found as mitigating factors an absence of dishonest or selfish motive in the Sandoval matter, the communication with the court concerned a matter of procedure, rather than an attempt to influence the judge on the merits, the Sandovals were satisfied with respondent's representation, and the Knapp judgment was paid. The board concluded that a private censure was the appropriate form of discipline to be imposed in this matter.

A hearing panel of the Grievance Committee rejected the board's recommendation and recommended a public censure because respondent's misconduct is serious and is not mitigated by the fact that his client directed it and was not harmed by it, and his disciplinary history.

The selection of discipline to be imposed must ultimately be made by this court, and we have set out the factors to be considered and the purposes to be served by disciplinary sanctions. *E.g., People v. Berge*, 620 P.2d 23 (Colo.1980).

Considering all of the appropriate factors, we believe that respondent's misconduct justifies the imposition of a public censure, and we hereby publicly censure him. This public censure shall remain on file with this court and may be considered by the court in connection with any further violation of the Code of Professional Responsibility.

Respondent is ordered to pay the costs of these proceedings in the amount of $722.49 within sixty days of this date, by tendering that sum to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 510–S Dominion Plaza, Denver, Colorado 80202.

