The PEOPLE of the State of
Colorado, Complainant,

v.

John M. BANMAN, Attorney–Respondent.

No. 95SA68.

Supreme Court of Colorado,
En Banc.

Aug. 28, 1995.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

Montgomery Little & McGrew, P.C., David W. Bute, Kevin J. Kuhn, Melinda L. Sanders, Englewood, for attorney-respondent.

PER CURIAM.

In this lawyer discipline proceeding, a hearing panel of the supreme court grievance committee approved the findings and recommendation of a hearing board that the respondent be suspended from the practice of law for three years and be required to pay a promissory note arising from the settlement of a malpractice action. The respondent has excepted to the panel's recommendation on the ground that the period of suspension is too long given the circumstances of the case. Nevertheless, we accept the hearing panel's recommendation.

## I.

The respondent was admitted to the Colorado bar in 1972. The parties executed an unconditional stipulation of facts and rule violations, from which the hearing board derived most of its findings. In 1980, the respondent was retained by Gladys Connell to handle the administration of the estate of her husband. Connell was in her eighties at this time, and had two daughters, Sally Deckard and Colleen Miller. Through the respondent's efforts, and following complex negotiations, certain stock belonging to Connell was sold. The proceeds of the sale of Connell's stock was approximately $8.2 million. The respondent received a "marketing fee" in excess of $350,000, in addition to attorney fees.

### A.

In September 1982, the respondent and Connell executed a new fee agreement, known as the "General Counsel Agreement," under which the respondent was to provide legal counsel in all business activities, enterprises, or investments in which Connell was involved, as well as handling income and estate tax planning and returns. The respondent was given a general durable power of attorney which allowed him to handle Connell's affairs. The agreement was for a period of four years and provided that the respondent was compensated $350,000 for the first year, and $200,000 plus adjustments each of the following years. Pursuant to the stipulation, the board found that the respondent collected an excessive fee with respect to the General Counsel Agreement, contrary to DR 2–106(A), and failed to provide appropriate accountings to Connell, in violation of DR 9–102(B)(3).

### B.

In 1983, the respondent recommended that Connell, Deckard, and Miller become involved in the purchase of a helicopter as an investment. The respondent also agreed to invest his own funds in the venture, which was originally structured as a partnership of the respondent, Deckard, and Miller. The respondent withdrew from the partnership before investing any of his own funds, however. The helicopter purchase turned out to be a poor investment.

The respondent failed to provide sufficient disclosure to Connell and her daughters concerning the business transaction he was entering into with them, and did not advise them of the conflict of interest created. Moreover, the respondent lacked significant experience, education, and expertise in the area of investment advisory services, or financial and tax planning, in order to recommend an investment of this nature. He thereby violated DR 5–104(A) (a lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, unless the client has consented after full disclosure); and DR 6–101(A)(2) (a lawyer shall not handle a legal matter entrusted to the lawyer without adequate preparation under the circumstances).

### C.

In 1983, Connell entered into an apartment development investment in Arizona. The apartment property was eventually foreclosed by the lenders, and the investments of all parties were lost. The respondent failed to contribute his sons' share of the operating losses, as he had offered. He also entered into the business relationship with his clients when he knew they had differing interests, and with respect to which he did not have significant experience, education, or expertise in the area of investment advisory services, or financial and tax planning, again violating DR 5–104(A) and DR 6–101(A)(2).

### D.

At the request of the Millers and Deckards, the respondent in 1984 invested $275,000 of Connell's money in a limited partnership formed to invest in a shopping center development in Arizona. The respondent also became a partner in the project, and he had Connell transfer her ownership interest to him and her two daughters, which resulted in each of them obtaining an eighteen percent share in the development. Under the agreement, the Deckards and the Millers each gave the respondent a check for $85,000 for the respondent to hold until the project was refinanced or sold. The venture was not successful, and the losses amounted to over $1.8 million. The respondent was also supposed to contribute $85,000, but did not, so he had no funds at risk. The respondent stipulated, and the hearing board found, that the respondent's conduct again violated DR 5–104(A) because of his failure to disclose the potential conflict of interest when he entered into the business transaction.

### E.

In 1983, the respondent purchased an office-industrial building on Connell's behalf, and several years later he structured a sale of the building to Miller and Deckard. In 1989, after the respondent's services were terminated, the building was sold for less than Miller and Deckard paid for it. The respondent violated DR 6–101(A)(2) (handling a legal matter without adequate preparation under the circumstances) by virtue of his lack of experience, education, and expertise in the investment and tax areas.

### F.

Connell died in February 1987. The respondent and Connell's daughters agreed that he would represent all aspects of the investments and manage the administration of the estate under the previously established arrangement. The respondent did not send a bill or invoice to the daughters for his attorney fees, but paid himself $215,000 in 1987, and $89,000 in 1988, from Connell's assets. The respondent stipulated that the foregoing conduct violated DR 2–106(A) (a

lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee), and DR 9–102(B)(3) (failure to maintain complete records of client property in the possession of the lawyer and to render appropriate accounts to the client regarding the property).

## G.

In December 1987, the respondent executed a federal estate tax return on behalf of the Connell estate. The return indicated that no tax was due primarily because of deductions of nearly $11 million. Between June and October 1988, a lawyer for the Internal Revenue Service sought various records and information concerning the estate. The respondent did not supply the records in a timely manner. In addition, he made errors with respect to stock valuations, bank accounts, the gift tax paid, and generally performed an inadequate job in preparing the tax returns. The board concluded that the respondent thereby violated DR 6–101(A)(2) and DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer). The respondent has also admitted that he violated DR 6–101(A)(2) and DR 6–101(A)(3) in his preparation of Connell's 1985, 1986, and 1987 personal income tax returns.

Deckard and Wade fired the respondent in January 1989, and the estate filed a malpractice claim against him. The case was settled in 1990, with the respondent making a payment up-front and executing a $60,000 promissory note.

## II.

In recommending a three-year suspension rather than disbarment, the assistant disciplinary counsel noted that the respondent's conduct was not actually dishonest and that he did not convert any client funds. The hearing panel approved the hearing board's recommendation that the respondent be suspended for three years and, as an additional condition for reinstatement, be required to pay the $60,000 promissory note arising from the malpractice settlement.

The respondent's misconduct involved multiple instances of charging excessive fees, failing to disclose conflicts of interest, inadequate preparation and neglect, and therefore warrants suspension. *See* ABA *Standards for Imposing Lawyer Sanctions* 4.32 (in the absence of aggravating or mitigating factors, suspension is generally appropriate when a lawyer does not fully disclose a conflict of interest and causes injury or potential injury to a client), 4.52 (suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent and causes injury or potential injury to a client) (1991 & Supp. 1992) (ABA *Standards*).

The respondent acknowledges that a suspension is in order but, given the circumstances in mitigation, asserts that it should be for one year and one day or two years, rather than three years. The respondent indicated that in 1987 his marriage was failing and eventually ended in divorce. In addition, one of his two sons was diagnosed with a serious disease in August 1990, and died in 1994. The parties stipulated that the following factors were present in mitigation: (1) the absence of a prior disciplinary record in over twenty years' practice, ABA *Standards* 9.32(a); (2) the respondent's personal and emotional problems, *id.* at 9.32(c); (3) the respondent has cooperated throughout the disciplinary proceedings, *id.* at 9.32(e); (4) the delay in the disciplinary proceedings was not attributable to the respondent, *id.* at 9.32(j); and (5) the board found that the respondent had expressed remorse for the misconduct, *id.* at 9.32(l).

The board found as aggravating factors the presence of a pattern of misconduct, *id.* at 9.22(c), and multiple offenses, *id.* at 9.32(d). Moreover, the respondent "admitted that he lost objectivity in his investment decisions, and that his decision to participate in the investments was based on 'greed' and did not take into account the conflicts of interest that existed." *See id.* at 9.32(b) (a selfish motive is an aggravating factor).

It does appear that the respondent's breach of his fiduciary duty to his clients was in large part motivated by greed. The mitigating factors do not apply during much of the time period that the misconduct occurred, which was most of the 1980s. We

therefore conclude that a three-year suspension is warranted, and we accept the hearing panel's recommendation.

### III.

Accordingly, it is hereby ordered that John M. Banman be suspended from the practice of law for three years, effective thirty days after the issuance of this opinion. C.R.C.P. 241.21(a). The respondent shall also demonstrate prior to reinstatement, and as a condition of reinstatement, the full payment of the $60,000 owing to the Connell estate pursuant to the terms of the promissory note. It is further ordered that the respondent pay the costs of this proceeding in the amount of $1,570.21 within ninety days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202. Banman shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)–(d).

KIRSHBAUM, J., does not participate.