**The PEOPLE of the State of Colorado, Complainant,**

v.

**James M. DeROSE, Attorney–Respondent.**

**No. 97SA160.**

Supreme Court of Colorado,
En Banc.

Sept. 22, 1997.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Patrick D. Tooley, Denver, for Attorney–Respondent.

PER CURIAM.

This is a lawyer discipline proceeding where a hearing panel of the supreme court grievance committee approved the findings and recommendation of a hearing board that the respondent be suspended from the practice of law for a period of two years, with reinstatement conditioned on the making of certain restitution and the satisfaction of other requirements. We issued an order to show cause why more severe discipline, including disbarment, should not be imposed. After considering the responses of the parties, we have concluded that the respondent should be suspended for three years. However, one member of the court would disbar the respondent.

I.

The respondent has been licensed to practice law in this state since 1966. The hearing board heard the testimony of the complainant's and respondent's witnesses, including the respondent himself, and considered a stipulation between the parties and other exhibits introduced at the hearing. The board then made the following findings and conclusions by clear and convincing evidence.

A. The Melissa Doll Matter

Melissa Doll was injured in an automobile accident in which she was a passenger on June 2, 1992.[1] She was twenty-four years old at the time and sustained head injuries to the extent that she was in a coma for an extended period of time. Doll incurred substantial medical expenses, some of which were paid by insurance and some by Medicaid.

Doll was an acquaintance of Russell Edward Vigil, whom she met at the athletic club where she worked. Vigil, who is the respondent's son-in-law, was a lawyer at that time. Following the accident, Vigil petitioned the probate court and he was appointed Doll's temporary conservator. In June 1992, in his capacity as conservator, Vigil hired the respondent to handle Doll's personal injury claim. Vigil and the respondent had known each other for several years and had shared office space. In June 1992, Vigil was dating the respondent's daughter, whom Vigil married in October 1992. The respondent and Vigil signed a contingency fee agreement, whereby the respondent would receive 20% of any settlement amount recovered. The

---

1. The Melissa Doll matter was also the subject of another lawyer discipline case. *See People v. Vigil,* 929 P.2d 1311 (Colo.1996). We disbarred Russell Edward Vigil for his role in it. *Id.* at 1316.

respondent's normal contingency fee rate is 33%.

Following her release from the hospital in early August 1992, Doll moved to Pennsylvania to stay with her father, where she incurred further medical expenses.

The respondent settled Doll's personal injury claim for $220,000 in September 1992. Around September 9, the respondent prepared a trust agreement for the purpose of managing the settlement funds, which was signed by Vigil as conservator. The respondent agreed to serve as the trustee. After the settlement proceeds were received on October 9, 1992, Doll endorsed the settlement check and the respondent deducted his $44,000 contingency fee. He gave Doll $12,000 as she had requested and deposited the remaining funds in his trust account, opening a bank account for the trust a week later.

The trust agreement prepared by the respondent failed to include language which would shield the settlement proceeds from Medicaid claims, although he knew at the time that his client and her father intended to seek Medicaid benefits. Medicaid, which in 1992 was administered in Colorado by the department of social services, paid Doll's medical expenses that were not covered by insurance.

The respondent failed to notify the department of social services of the settlement of his client's personal injury claim as required by section 26–4–403(4), 11B C.R.S. (1996 Supp.). About six months after she settled, the department of social services started to inquire about the status of the claim and sought reimbursement for the medical expenses that were covered by Medicaid. In April and October 1993, a Colorado Senior Assistant Attorney General sent letters to the respondent regarding the state's claims. The respondent did not reply. The attorney general then sent letters to Vigil asking him about the status of the personal injury matter. Thereafter, the attorney general contacted the respondent who told her the case had been settled a year earlier. The state initially claimed it was entitled to be reimbursed in the amount of $55,000, although it

was later agreed that the estate should reimburse the state for $47,000. The amount was not paid at the time.

Doll, now represented by another lawyer on a *pro bono* basis, brought an action against the respondent and Vigil in the District Court for the City and County of Denver and sought additional relief from the Denver Probate Court. In July 1994, the probate court ordered the respondent to reimburse the state $47,000 from the settlement trust funds, and he complied.[2]

Under the terms of the Doll trust agreement, the respondent was given uncontrolled discretion to make investments, purchase property, make loans, mortgages, leases, and acquire or dispose of property. On or about December 30, 1992, the respondent, acting as trustee, made a loan in the amount of $25,656.66 to one of his son-in-law's former dissolution of marriage clients who needed the money to pay her former spouse for his interest in their marital residence. The loan was secured by a piece of real estate owned by the former client. The borrower made all of the scheduled payments as required under the promissory note.

On or about February 17, 1993, the respondent loaned his daughter $70,000 from the Doll trust. The daughter executed a promissory note that carried a 9% interest rate, comparable to the prevailing rates at the time. The loan was secured by a first deed of trust on real property owned by the daughter in Denver, and had a value in excess of the amount of the loan. This property had previously been owned by the respondent's daughter's grandmother and great aunt, and $48,000 of the loan was used to pay off the outstanding mortgage and promissory note. The remaining $22,000 was in the form of a check to the daughter. The respondent's daughter did not make all of the scheduled payments on the note on time.

On or about April 8, 1993, the respondent used funds from the trust to purchase a house from a bank which had obtained the house through foreclosure. The previous owners of the house were Vigil's parents,

2. In January 1996, Melissa Doll's lawyer discovered a mistake in Medicaid's bill, resulting in an overpayment to the state, which the state refunded to Doll.

and, after purchasing the house as trustee, the respondent leased it back to his son-in-law's parents. The lease was for a period of five years. The Vigils failed to make any lease payments on the house, but the respondent took no legal action against them. Because he did not receive the lease payments, the respondent did not make payments to Doll as she anticipated.

In July 1994, Doll's lawyer asked the probate court for an accounting and liquidation of the investments the respondent had made. The respondent liquidated the three foregoing investments and Doll was paid all sums she was due, including interest.

The action that Doll brought against the respondent individually, and as trustee of her trust, was settled in September 1996. Without admitting liability, the respondent agreed to pay her $25,165. He made an initial $5,000 payment, but the hearing board found that as of the time of the hearing in this case, the remainder, which was to have been paid by October 25, 1996, had not been paid.

The hearing board found that the respondent's conduct had violated the following provisions. His failure to include language in the trust which would shield it from Medicaid liability violated DR 6–101(A)(2) (handling a legal matter without adequate preparation). The respondent's failure to notify the department of social services of the settlement of his client's personal injury claim also violated DR 6–101(A)(2).

By loaning money from the trust to his daughter, purchasing Vigil's parents' former residence for the purpose of leasing it back to them, and by then failing to take any legal action against the Vigil's when they did not make lease payments, the respondent violated Colo. RPC 1.7(b) (representing a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests), and Colo. RPC 8.4(h) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law).[3] Finally, the respondent's failure to make sufficient efforts to ensure that

his client received timely payments from the trust violated DR 6–101(A)(3) and Colo. RPC 1.3 (neglecting a legal matter).

### B.  The Roger Felton Matter

The respondent represented Roger Felton in a dissolution of marriage matter in 1982. The trial court entered permanent orders in November 1983 directing that the marital residence be sold and the proceeds divided evenly between the parties. The house was not sold despite repeated efforts, however.

In May 1984, the respondent prepared a deed of trust agreement executed by Felton as "settlor" and the respondent as "trustee," wherein Felton conveyed the real property to the respondent. The property was to be held in trust pursuant to the deed of trust agreement. At the same time, the respondent prepared a quitclaim deed wherein Felton conveyed the property to the respondent. The quitclaim deed which was subsequently recorded did not make any reference to the respondent's capacity as trustee. The respondent admitted that because the real estate records indicate that he personally held title to the property, as opposed to holding the title as trustee, he effectively commingled Felton's property with his own, contrary to DR 1–102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law); DR 6–101(A)(2) (handling a legal matter without adequate preparation); and Colo. RPC 1.15(a) (failing to segregate client property from the lawyer's own property).

### II.

The hearing panel approved the board's findings, including the recommendation that the respondent be suspended for two years, and, as conditions of reinstatement, be required to make restitution to Doll and to complete ten hours of legal education in the area of ethics and ten hours in the area of trusts and estates. Neither party excepted to the recommendations. We issued an order to show cause why more severe discipline

---

**3.** The respondent's conduct violated the Rules of Professional Conduct because it occurred after

their effective date, January 1, 1993.

should not be imposed, including the possibility of disbarment. The complainant now takes the position that disbarment is warranted based on the respondent's conduct in the Doll matter which is "analogous to conversion." The conduct is only "analogous to conversion," however, because the complaint never charged the respondent with conversion and therefore the board made no such finding. After considering the responses of the complainant and the respondent, we have concluded that a suspension for three years is appropriate, together with certain conditions for reinstatement.

The misconduct in this case involves multiple instances of the respondent's investing his client's funds for the benefit of his friends and relatives, as well as neglecting and handling legal matters without being adequately prepared. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), provides that a period of suspension is appropriate in this case. *See* ABA *Standards* 4.32 (in the absence of aggravating or mitigating factors, suspension is generally appropriate when a lawyer does not fully disclose a conflict of interest and causes injury or potential injury to a client); *id.* at 4.42 ("[s]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."); *id.* at 4.52 (suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent and causes injury or potential injury to a client).

The hearing board found the existence of the following factors in aggravation: the respondent received a letter of admonition for handling a legal matter without adequate preparation and neglecting it, *see id.* at 9.22(a); there is a pattern of misconduct, *see id.* at 9.22(c); and the respondent has substantial experience in the practice of law, *see id.* at 9.22(I). What disturbs us the most, however, is that the respondent breached his duty to protect Doll in what should have been a relationship of the highest trust because, in addition to being his client, she was a particularly vulnerable victim, recuperating from a serious head injury. *See id.* at 9.22(h).

In mitigation, the board found that the respondent did not have a dishonest or selfish motive, *see id.* at 9.32(b)[4]; he has an otherwise good character and favorable reputation, *see id.* at 9.32(g); and he has demonstrated remorse, *see id.* at 9.32(*l*).

The cases that the respondent cites in his response to our order to show cause involve facts different from this case. In addition, because the complaint did not charge, and the board did not find, that the respondent misappropriated or converted Doll's funds or property, cases in which disbarment was ordered based on the lawyers' conversion of client property are not particularly relevant.

We find *People v. Banman,* 901 P.2d 469, 471 (Colo.1995), similar and helpful, however. Banman charged excessive fees for managing his client's business, failed to provide appropriate accountings, entered into business transactions with his clients without revealing conflict of interest, and handled legal and investment matters in which he did not have experience. *See id.* at 471. Banman was suspended for three years despite the absence of previous discipline. *See id.* at 471–72. As we did in *Banman,* we find suspension for three years appropriate here. We recognize respondent's conduct, as reflected in the findings of the hearing board, is not as aggravated as that of his son-in-law in *People v. Vigil,* 929 P.2d 1311 (Colo.1996), and therefore we do not find disbarment necessary.

---

4. The board stated:

> The board finds it significant however, that the loans made by the trust through the respondent included interest rates comparable to or better than the prevailing rates. Moreover, the potential of serious injury to Ms. Doll was diminished by the fact that the respondent adequately secured all loans made by the trust. The respondent apparently believed he could get a good return on Melissa Doll's money and at the same time help his family and relatives. *However, the inherent conflicts were patently evident at the outset of these transactions and when the conflict actually arose between Ms. Doll and the respondent's relatives, the respondent acted in the interest of his family members rather than in the interest of his client.*

(Emphasis added.)

### III.

Accordingly, it is hereby ordered that James M. DeRose be suspended from the practice of law for three years, effective thirty days after this opinion is issued. Prior to reinstatement, and as conditions for reinstatement, the respondent is ordered to comply with his agreement to make restitution to Melissa Doll in the amount of $25,165.00; and the respondent must complete ten hours of continuing legal education in the area of ethics and ten hours in the area of trusts and estates. The respondent is also ordered to pay the costs of this proceeding in the amount of $4,062.59 within ninety days of the date on this decision to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202. The respondent shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)-(d).